HAWAIIAN DREDGING AND CONSTRUCTION
CORPORATION, a Nevada Corporation, Plaintiff
and
BLACK CONSTRUCTION CORPORATION
a Nevada Corporation, Plaintiff Intervenor

v.

GUAM AIRPORT AUTHORITY, Defendant
and
PTC AND TOKYO COMPANY, a Joint Venture
Defendant Intervenor

Civil No. 815-79
Superior Court of Guam
January 18, 1980

- - - - -

- - - - -

WEEKS, Judge

## DECISION

This matter was filed as a nine count complaint requesting money damages, declaratory relief and an injunction regarding the construction of a new Airport facility on Guam. Hearing was had on the issue of a preliminary injunction between November 5 and 13, 1979. On November 21 the preliminary injunction issued.

Thereafter, all parties met in chambers on November 29, 1979. At the request of the parties, the court agreed that it would hear the matter as a declaratory judgment action on the record and briefs of the preliminary injunction hearing[1] should the parties by stipulation settle the damage and injunctive relief aspects of the case. Although the parties requested the court take this course of action so as to decide the matter expeditiously and save public monies due to the rising cost of construction of the airport which is the subject matter of this litigation, it was not until December 27, 1979 that such a stipulation was filed.

This stipulation provided that plaintiffs dismiss their damage claims and that defendant Guam Airport Authority act

under its reserved power in the contract documents to reject all bids for construction of the Airport Facility, thus mooting the claim for injunctive relief. The matter was thereupon submitted to the court for a declaratory judgment on the applicability and effect of Sections 1 thought 3 of Public Law 14-8 (which provides a bid credit for contractors who limit employment of nonresident aliens below a certain percentage on public works contracts) and Section 25 of Public Law 15-66 (which restricts an employer with more than 40% nonresident alien workers from being awarded a public works contracts). As the validity of Public Law 14-8 and Public Law 15-66 was not briefed or argued in the preliminary injunction hearing, the parties were given until January 11, 1980 to brief this issue, and the matter was submitted.

Although the bid award which was the subject matter of this action has been withdrawn, there remains a real and actual controversy as to the effect and applicability of these statutes to any rebid of the project. Because of our determination that these statutes are void and violative of the Organic Act of Guam, it is not necessary to state the specific questions presented beyond the first: Are Public Laws 14-8 Sections 1-3 and 15-66 Section 25 valid and legally enforceable? We·turn now to the merits.

Public Laws 14-8:1-3 and 15-66:25 exceed the legislative power granted the Government of Guam by the Organic Act and are thus void. 48 U.S.C. 1423(a) provides the standard which circumscribes any exercise of power by the Guam Legislature: "The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this chapter and the United States applicable to Guam." Judged by this standard, these questioned statutes must fall on three distinct grounds.

I. PUBLIC LAW 14-8 SECTIONS 1-3 AND PUBLIC LAW 15-66 SECTION 25 ARE NOT CONCERNED WITH A SUBJECT OF LOCAL APPLICATION.

Public Law 15-66 disqualifies a contractor who has more than a stated percentage of nonresident alien workers from receiving certain contracts from the Government of Guam. As the Supreme Court said of a similar statute which set a limit on the percentage of alien workers which might be employed by a private employer, "the act undertakes to operate directly upon the employment of aliens, and if enforced would compel the employer to discharge a sufficient number of his employees to bring the alien quota within the prescribed limit." Truax v. Raich, 239 U.S. 33, 38, 36 S.Ct. 9 (1915).

Similarly, Public Law 14-8 operates to discourage the employment of nonresident aliens, albeit by giving financial incentives to employers who discriminate against nonresident

118

aliens rather than penalizing the employer of nonresident aliens. The purpose of Public Law 14-8 is stated in Section 2 of the bill: "In order to induce contractors to hire more United States citizens and permanent residents. . . ." As the bill's sponsor, Senator Charfauros put it: "by hiring local people . . . you get advantage in the bidding process and I think that . . . this is just one step in reducing our alien workforce . . . ."[2] The legislative intent is clearly to affect the employment of nonresident aliens:

> The authority to control immigration - to admit or exclude aliens - is vested solely in the Federal Government. Fong Yue Ting v. U.S., 149 U.S. 698, 713, 13 S.Ct 1016. The assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state would be tantamount to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot live where they cannot work. And, if such a policy were permissible, the practical result would be that those lawfully admitted to the country under the authority of the Acts of Congress, instead of enjoying in a substantial sense and in their full scope the privileges conferred by the admission, would be segregated in such of the states as chose to offer hospitality. Truax, supra, 239 U.S. at 42, 36 S.Ct. at 11.

What Truax says regarding the states is no less true of the Territory of Guam, for neither 48 U.S.C. 1423(a) nor any other Federal Statute shows any intent to delegate this exclusive Federal power to Guam.

"Local interest" has long been a word of art in the realm of the U.S. Constitution, Article I, Section 8, Clause 4, the Supremacy Clause as it applies to the states. For local interests, the several states of the Union exist; but for international purposes, embracing our relations with foreign nations, we are but one people, one nation, one power." Chai Chin Ping vs. U.S., 130 U.S. 581, 606, 9 S.Ct. 623, 630 (1889), Fong Yue Ting vs. U.S., 149 U.S. 698, 706, 13 S.Ct. 1016, 1019 (1893). Acts such as these which operate to discriminate against aliens do do not concern a subject matter which is of local interest. Rather, they operate in an area which is of particular national interest. These acts must therefore be held violative of 48 U.S.C. 1423(a).

II. PUBLIC LAW 14-8 SECTION 1-3 AND PUBLIC LAW 15-66 SECTION 25 ARE INCONSISTENT WITH THE LAWS OF THE UNITED STATES APPLICABLE TO GUAM, AND THUS VIOLATE 48 U.S.C. 1423(a).

In the Immigration and Nationality Act of 1952 as amended (8 U.S.C. §1101 et seq.) Congress has regulated the entry of nonresident alien workers. As the California Supreme Court put in in unanimously striking down a state law restricting the right to public employment by aliens:

> In light of the comprehensive federal scheme for dealing with the admission of aliens who seek to enter the American labor market, any state [territorial] legislation affecting this same subject matter runs a high risk of conflict with the supreme law . . . . Moreover, [the] section interferes with the federal scheme for admission of nonimmigrants to perform temporary but essential services in this country; regardless of the national interest at stake . . . California [Guam] prevents such persons from performing otherwise valuable services simply because they labor on public works. Purdy and Fitzpatrick vs. State of California, 71 C.2d 566, 575, 456 P.2d 645 (1969).

The specific concern of these statutes is the nonresident alien worker, often referred to as an "H-2" worker because the reference to such workers in the definitions section to 8 U.S.C. is contained in §1101(a)(15)(H)(ii). Such a person is precluded from entering the U.S.

> . . . for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. 8U.S.C. 1182(a)(14).

The Immigration Act is made applicable to Guam. 8 U.S.C. 1101(a)(36). Thus these acts which deny employment to nonresident aliens after the Secretary of Labor certifies that there is a need for them in this area and that it will not adversely affect wages must be seen as "inconsistent with the laws of the United States applicable to Guam," (48 U.S.C. 1423(a)) and invalid.

120

III. PUBLIC LAW 14-8 SECTION 1-3 AND PUBLIC LAW 15-66 SECTION 25 ARE VIOLATIVE OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, MADE APPLICABLE TO GUAM BY 48 U.S.C. 1421(b)(u).

The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide "in any state" on an equality of legal privileges with all citizens under non-discriminatory laws. <u>Takahashi vs. Fish and Game Comm'n.</u>, 334 U.S. 410, 420, 68 S.Ct. 1138, 1143 (1948).

It has long been settled that aliens are 'persons' for the purposes of the equal protection and due process of law clauses of the Fourteenth Amendment,[3] and 48 U.S.C. 1421(b)(u) extends the equal protection clause to the Territory of Guam and states that it "shall have the same force and effect there as in the United States or in any State."

Decisions of the United States Supreme Court "have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny."[4] "Not only must the classification reasonably relate to the purposes of the law, but also the state must bear the burden of establishing that the classification constitutes a necessary means of accomplishing a legitimate state interest, and that the law serves to promote a compelling state interest."[5]

Before turning to apply this standard to the statutes under question, it first must be noted that the statutes do not operate against all aliens, but rather favor citizens and resident aliens over nonresident aliens. In such a case involving discrimination <u>between</u> classes of aliens, is strict scrutiny still the applicable test?

The Supreme Court has answered this question in the affirmative. "Appellants claim [the statute] should not be subjected to such strict scrutiny because it does not impose a classification based on alienage. [I]t is said the statute distinguishes 'only within the "heterogeneous" class of aliens' and does not distinguish between citizens and aliens vel non.' [The] important points are that [the statute] is directed at aliens and that only aliens are harmed by it. The fact that the statute is not an absolute bar does not mean that it does not discriminate against the class."[6]

The standard by which these statutes must be judged is strict scrutiny. But as the Supreme Court said in invalidating a Puerto Rico statute which discriminated against foreign engineers:

We do not suggest, however, that a State, Territory, or local government, or certainly the Federal Government may not be permitted some discretion in determining the circumstances under which it will employ aliens or whether aliens may receive public benefits or partake of public resources on the same basis as citizens. In each case, the governmental interest claimed to justify the discrimination is to be carefully examined in order to determine whether that interest is legitimate and substantial, and inquiry must be made whether the means adopted to achieve the goal are necessary and precisely drawn.[7]

We turn then to the governmental interests which are claimed to justify these acts.

First, the legislative history indicates a concern with protecting citizens and resident aliens from nonresident alien economic competition. But as these nonresident aliens are 'persons' within the meaning of the Fourteenth Amendment, "[s]uch a purpose constitutes prima facie discrimination for its own sake; and if the state sought truly effective protection against alien economic competition by extending a prohibition or limitation against all types of alien employment, such a scheme would clearly offend equal protection."[8]

"May the [territory] simply favor its own citizens in the disbursement of public funds? First, since [nonresident] aliens support the [territory] with their tax dollars, any preference in the disbursement of public funds which excludes [nonresident] aliens appears manifestly unfair, Second, [the statute] prevents [nonresident] aliens from receiving the federal funds which largely support the construction of our highways and other projects; the [territory] can urge no claim to a proprietary interest in such federal funds. Finally, any classification which treats all [nonresident] aliens as undeserving and all *United States citizens [and resident aliens] as deserving* rests upon a very questionable basis."[9]

Concern with local employment is certainly a rational concern of a local legislature. But these statutes favor a resident alien or citizen who may be domiciled in Hawaii or California over a non-resident alien who may already be present in Guam. And as noted supra, before admission of a nonresident alien, the Department of Labor has already determined administratively that there are not sufficient local laborers. Having used a suspect classification to produce such a result, it cannot be held that these statutes serve a compelling territorial interest, that this classification reasonably relates to the purpose of the law. or that such a classification is a necessary means of accomplishing a legitimate state interest. We note the fact that the territory has the means to address the problem of local employment in the construction trades in a

variety of ways other than a discriminatory classification, such as the requirement that bidders have apprenticeship and training programs, which was contained in Public Law 14-8.

Judged by the strict scrutiny standard, Public Law 14-8:1-3 and Public Law 15-66:25 must clearly be held invalid as violative of equal protection.

The Court feels that it is worthwhile to add two final notes. First, Public Law 14-8 had a saving clause:

> Section 8. Severability. If any provision of Sections 1 to 3 of this Act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of these sections are severable.

The Court has attempted in vain to reach a construction of Public Law 14-8 which would sever and save that portion of the act which is non-discriminatory and does not impede on federal concerns: the requirement of apprenticeship and training programs for the bid credits. This requirement was a predicate for each of the bid credits based on different discriminatory percentages. The court has been unable to say that the granting of any of the bid credits for the apprenticeship requirement alone would reflect the intent of the legislature, and must strike down the sections in their entirety.

Finally, as may be noted from the jurisdictions which have struggled with this problem, how to deal with alien labor is not a problem unique to Guam. We cite and adapt the language of the California Supreme Court when it was required to strike down similar legislation:

> [Guam] need not, however, abandon its concern for the state labor market. The gross remedy of [P.L. 14-3 and P.L. 15-66] may not stand, but the [territory] may and should inform the Secretary of Labor and other federal officials concerning the labor conditions within [Guam] and within particular industries and occupations. [Guam] does not remain, therefore, without power to act, but merely without power to act with final authority upon a matter for which Congress has determined that one national policy administered by the federal government should prevail.[10]

Footnotes:

1. Rule 65(a)(2) allows that "any evidence received on an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated on the

trial." See, Wright and Miller, Federal Practice and Procedure, Vol. II, Section 2950, p. 493 (1973).

2. Legislative debate on Bill No. 43, Fourteenth Guam Legislature, p. 5.

3. Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070 (1886).

"These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, of nationality; and the equal protection of the laws is a pledge of the protection of equal law."

4. Graham v. Richardson, 403 U.S. 369, 372, 91 S.Ct. 1848, 1852 (1971).

5. Purdy and Fitzpatrick, supra, 71 C2d at 579. Citations omitted.

6. Nyquist v. Mauccet, 97 S.Ct. 2120 (1977).

7. Board of Eng. v. Otero, 426 U.S. 572, 604, 605, 96 S.Ct. 2764, 2282.

8. Purdy and Fitzpatrick, supra, 71 C2d 566, 581, citing Truax v. Raich, 239 U.S. 33.

9. Id., 581, 582.

10. Id., 577.